UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY A. GROOMS,                          Case No. 08-14189

                Plaintiff,                 Julian Abele Cook
vs.                                        United States District Judge

COMMISSIONER OF SOCIAL                     Michael Hluchaniuk
SECURITY,                                  United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 17)**

I.     **PROCEDURAL HISTORY**

       A.     Proceedings in this Court

       On September 29, 2008, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Julian Abele Cook, Jr. referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability insurance benefits. (Dkt. 3). This matter is currently before the Court on

cross-motions for summary judgment. (Dkt. 12, 17, 18).

B.     Administrative Proceedings

Plaintiff filed the instant claims on March 3, 2004, alleging that she became unable to work on June 10, 2003.  (Dkt. 9, Tr. at 87-90).  The claim was initially disapproved by the Commissioner on July 29, 2004.  (Dkt. 9, Tr. at 70-74). Plaintiff requested a hearing and on February 13, 2006, plaintiff appeared with counsel before Administrative Law Judge (ALJ) David E. Flierl, who considered the case *de novo*.  In a decision by the Appeals Council dated April 24, 2006, the ALJ found that plaintiff was partially disabled.  (Dkt. 9, Tr. at 485-499).  Plaintiff requested a review of this decision on May 9, 2006.  (Dkt. 9, Tr. at 49-52).  On December 3, 2007, a second administrative hearing before Administrative Law Judge (ALJ) K. Burgchardt was held, at which plaintiff appeared with a non-attorney representative.  (Dkt. 9, Tr. at 17, 600).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on July 25, 2008, denied plaintiff's request for review.  (Dkt. 9, Tr. at 7-9); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** for further proceedings.

## II.   STATEMENT OF FACTS

### A.   ALJ Findings

Plaintiff was 42 years of age at the time of the most recent administrative hearing.  (Dkt. 9, Tr. at 87).  Plaintiff's relevant work history included about 17 years as a hair dresser.  (Dkt. 9, Tr. at 98).  In denying plaintiff's claims, defendant Commissioner considered degenerative disc disease, depression, head injury, headaches, and obesity as possible bases of disability.  (Dkt. 9, Tr. 19).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since June 10, 2003.  (Dkt. 9, Tr. at 19).  At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step.  *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 9, Tr. at 20).  At step four, the ALJ found that plaintiff could not perform her previous work as a hairdresser.  (Dkt. 9, Tr. at 26).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 9, Tr. at 26-27).

### B.   Plaintiff's Motion for Summary Judgment

Plaintiff argues that the ALJ improperly gave the greatest weight to the opinion of Dr. Shelby-Lane and the State Agency physicians PRFC and MRFC

opinions, while cherry-picking the opinion of treating physicians Drs. Inwald and

consultative examiner Dr. Imasa by giving weight only to those portions that the

ALJ found to be consistent with clinical findings and supported by the evidence.

(R. 24-25). First, the ALJ found that Dr. Inwalds January 2006 opinion is

consistent with the objective medical evidence in that it does not preclude simple,

unskilled work with one, two, or three step instructions, however his opinion of

marked limitations is not supported by any of the objective clinical evidence and

therefore is given little weight. (Tr. 25). In doing so, according to plaintiff, the

ALJ does not provide good reasons for rejecting portions of Dr. Inwald's opinion,

and instead, arbitrarily chooses portions of Dr. Inwald's opinion without

explanation. Dr. Inwald has been plaintiff's treating physician since November 24,

2003. Dr. Inwald continued to evaluate and treat Plaintiff, performing

psychotherapy multiple times a week. (Tr. 279-311, 390-481). In the January

2006 MRFC, Dr. Inwald explained that plaintiff has an affective disturbance of

anxiety and depression due to chronic pain, and noted that one of her diagnoses

includes Chronic Pain Disorder. (Tr. 388). Plaintiff asserts that the ALJ failed to

acknowledge this diagnosis in the decision, despite the fact that it was diagnosed

and acknowledged by many physicians. (Tr. 280, 368, 388, 489-99, 304-09).

According to plaintiff, the ALJ's failure to recognize plaintiff's Chronic Pain

Disorder is reversible error because her treating and evaluating physicians

recognized it as a key disorder when assessing plaintiff's limitations. Plaintiff's Chronic Pain Disorder was diagnosed by treating physician Dr. Inwald and recognized by Drs. DeSantis and Czarnecki. (Tr. 388, 368, 573). Plaintiff, citing to the DSM-IV, points out that chronic pain disorder causes significant distress or impairment in social, occupational, or other important areas of functioning, and the pain is not intentionally produced or feigned. Pain may lead to inactivity and social isolation, which in turn can lead to additional psychological problems such as depression and a reduction in physical endurance that results in fatigue and additional pain. *Id.* Further, chronic pain disorder is frequently associated with various sleep problems. Plaintiff points out that she has continuously reported sleep problems to her treating physicians, so that a sleep study and thyroid tests had been recommended and Ambien had been prescribed. (Tr. 273, 149, 183, 248, 312, 367, 345-65, 363, 362, 361, 554, 530, 565, 304-09, 353). The DSM-IV also notes that chronic pain disorder may be associated with many general medical conditions, including disc herniation. (Tr. 357, 564).

Plaintiff asserts that the ALJ failed to recognize plaintiff's chronic pain disorder despite the clear instruction in the regulations that an ALJ must "consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. The ALJ considered whether plaintiff met Listing 1.04, 11.18, 11.01,

12.02, and 12.04, but did not consider whether plaintiff met Listing 12.07. (Tr. 20).

Further, according to plaintiff, the ALJ did not include any limitations due to pain

disorder into plaintiff's RFC, despite clear findings to the contrary. Thus, plaintiff

argues that the ALJ should have given Dr. Inwald's opinion controlling weight, as

well as other physicians who had diagnosed chronic pain, such as Dr. Czarnecki.

Instead, according to plaintiff, the ALJ erred by not giving good reasons for

rejecting portions of Dr. Inwald's opinion while ignoring evidence and a diagnosis

on which the opinion was based.

The ALJ notes that Drs. DeSantis and Inwald opined that plaintiff could

return to her job as a school aide. (Tr. 25). Plaintiff suggests that the ALJ's erred

when he failed to acknowledge that both Drs. DeSantis and Inwald opined that

plaintiff could only perform work on a part-time basis, with specifically noted

work restrictions of 12 hours a week. (Tr. 368, 363, 349, 546, 280, 463).

According to plaintiff, these restrictions are inconsistent with work on a regular

and continuing basis, or 8 hours a day, 5 days a week. Plaintiff also asserts that the

suggested return to part-time work as well as her physical therapy recommendation

and advice to stay active was prescribed treatment as her treating physicians

consistently noted that she should try to remain active in order to keep up her level

of functioning. (Tr. 352, 543). The physicians' advice that plaintiff return to

employment must have been considered by him to be of no more than therapeutic value.

Plaintiff argues that the ALJ inappropriately gave little weight to the opinion of Dr. Czarnecki because it was not supported by the objective medical evidence, including clinical findings of Drs. Inwald and Imasa, and because it was not compatible with the other substantial evidence such as plaintiff's ongoing part-time work activity as a hairdresser, which is semi-skilled in complexity and required constant social interaction. (Tr. 26). In a seven page opinion, Dr. Czarnecki explained that his opinion was not only based on an examination and his treating physicians notes, which his opinion was consistent with, but also based on objective test results including an MMPI-2 which revealed chronic pain that resulted in impaired functioning. (Tr. 567-73).

According to plaintiff, the objective medical evidence in this case was consistent with plaintiff's subjective complaints and statements to treating physicians about pain. And, plaintiff asserts, viewing the record as a whole makes it clear that plaintiff's underlying medical condition could reasonably be expected to produce disabling pain. Plaintiff argues that the ALJ failed, in evaluating her credibility, to consider the seven factors listed in SSR 96-7p. Here, the disabling symptoms claimed by plaintiff were the product of documented medical

conditions; and therefore, the ALJ should have applied the SSR 96-7p factors to determine plaintiff's credibility.

As the Seventh Circuit has noted, "[i]f pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). Here, as in *Carradine*, plaintiff has been diagnosed with chronic pain disorder, which is a "fancy name for psychosomatic illness, that is, physical distress of psychological origin[]" and "[t]he issue in the case is not the existence of these various conditions of hers but their severity and, concretely, whether, as she testified … they have caused her such severe pain that she cannot work full time." *Carradine*, 360 F.3d at 754; *see also Branham v. Gardner*, 383 F.2d 614 (6th Cir. 1967). Plaintiff argues that the ALJ's rejection of the plaintiff's complaints because the objective medical evidence purportedly did not fully support plaintiff's allegations, was contrary to SSR 96-7p, which provides that "[t]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence." Here, contrary to the ALJ's decision, plaintiff asserts that there are objective findings supporting plaintiff's pain. Dr. Czarnecki noted that plaintiff has taken an MMPI-2, which revealed an inverted Conversion V, reflecting a

failed, regressed, overwhelmed, and decompensated hysterical somatoform defense constellation. (Tr. 571). Thus, according to plaintiff, she satisfied the standard under *Duncan*, and her complaints of pain should be found credible. *See* 20 C.F.R. § 404.1529(c); 404.1529(d).

The ALJ stated that plaintiff's ability work in the months immediately following the accident suggests that her alleged symptoms were exaggerated. (Tr. 24). The ALJ points to a treatment note approximately one month after the automobile accident noting that plaintiff was working part time. (Tr. 24, 155). The ALJ fails, however, to recognize that the remainder of the treatment note states that plaintiff had pain and difficulty after working only part-time. (Tr. 155). The treatment notes reflect that plaintiff attempted to work on a very limited basis, for as little as 2 hours a day, after the automobile accident but had to stop due to pain. (Tr. 366). Later, plaintiff tried to return to work three hours per day for three to four days per week, but stopped that schedule short of one month due to pain. (Tr. 366). Plaintiff returned to work on July 18, 2004 working four hours a day, one day per week, later increased to about 12 hours a week. (Tr. 366). Plaintiff argues that this evidence is consistent with plaintiff's testimony, and the fact that she attempted to return to work after her automobile accident should weigh in favor of her credibility rather than against.

The ALJ also found the nature and length of plaintiff's vacation to Disney World inconsistent with her allegations of total disability. (Tr. 24). To the contrary, plaintiff argues that her trip was entirely consistent with her impairments as she used a scooter, rested regularly, had help from family, had to take extra pain mediation, and reported pain after the trip. (Tr. 531, 543, 627, 543). Despite taking extra pain medication and providing many rest periods, plaintiff reported that her pain was exacerbated by the long distance trip and increased activity. (Tr. 543). Plaintiff argues that she should not be punished for her attempt to take a vacation, particularly when it aggravated her impairments and lends credibility to her complaints. The courts have noted that there is a profound difference between an individual with a sedentary lifestyle and one having a sedentary RFC. *Stennett v. Comm'r of Soc. Sec.*, 476 F. Supp. 2d 665, 672 (E.D. Mich. 2007). Just because plaintiff can perform certain limited daily activities, at her own pace, does not mean that she can perform these activities at a level that would satisfy an employer. As the Sixth Circuit has found,

> [t]he fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant.

*Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967). Thus, plaintiff argues that some fairly minimal daily activities are not comparable to typical work activities. *Rogers*, 486 F.3d at 248-49. An individual is disabled within the meaning of the Act if she can engage in substantial gainful activity only by enduring great pain. *Id.*, citing, *Miracle v. Celebrezze*, 381 F.2d 580, 586 (6th Cir. 1967). Thus, according to plaintiff, the ALJ should not have used these minimal daily activities to discount plaintiff's credibility; instead he should have considered all of factors listed in SSR 96-7p as instructed by the Appeals Council remand. And, according to plaintiff, the ALJ erred by failing to credit these limitations and include them into her RFC.

    C.    <u>Commissioner's Motion for Summary Judgment</u>

The Commissioner asserts that substantial evidence supports the ALJ's assessment of plaintiff's capacity to perform the exertional and nonexertional requirements of work. The ALJ found plaintiff not disabled because uncontradicted vocational testimony identified a significant number of jobs that plaintiff could perform given this level of functional capacity. The Commissioner points out that the ALJ did not find plaintiff unimpaired; rather, the ALJ concluded that plaintiff's ability to work was reduced by numerous restrictions, and he incorporated these detailed limitations in both his hypothetical questioning of the

vocational expert, as well as his assessment of plaintiff's residual functional capacity.

In assessing plaintiff's functional capacity, the ALJ expressly found her subjective allegations of incapacitating symptoms and limitations not fully credible. (Tr. 21-24). In reaching this conclusion, according to the Commissioner, the ALJ expressly considered appropriate factors including the objective medical evidence, medical opinion evidence, plaintiff's conservative treatment, her medications, and her activities which included part-time work. 20 C.F.R. § 404.1529(c)(3). The Commissioner urges that the ALJ's reasonable weighing of these relevant credibility factors ought not be disturbed on judicial review.

The Commissioner also argues that the ALJ is not bound to accept the opinion of a treating physician if that opinion either lacks sufficient support in terms of medical signs and laboratory findings, or is either internally inconsistent or inconsistent with other credible evidence of record. 20 C.F.R. § 404.1527(c)(2). The ALJ specifically addressed the areas in which he considered Drs. Inwald's and Imsasa's opinions lacked support and were inconsistent with other credible evidence of record. (Tr. 25). According to the Commissioner, plaintiff fails to acknowledge that on multiple occasions, Dr. Inwald indicated that plaintiff could perform relatively undemanding work. Moreover, plaintiff acknowledges that Dr. Shelby-Lane and the state agency physicians supported the ALJ's opinion, but,

according to the Commissioner, plaintiff fails to explain why the ALJ's reliance on this expert opinion was erroneous.

The Commissioner argues that the ALJ reasonably concluded that Dr. Inwald's 2004 statements that plaintiff should "refrain from her occupational duties" indicated that plaintiff ought not perform her past work, a conclusion with which the ALJ agreed. But, according to the Commissioner, the ALJ reasonably interpreted those opinions as saying nothing about plaintiff's ability to perform less demanding work. To the contrary, in June 2004, Dr. Inwald described plaintiff as "recovering nicely" from her accident, and recommended that she return to work "on a graduated basis." (Tr. 462-63). In October 2005, Dr. Inwald opined that plaintiff could return to her past work as a school aide without specifying any limitations. (Tr. 390). The ALJ also specifically addressed Dr. Inwald's January 2006 opinion describing marked limitations in her ability to perform some work tasks. (Tr. 25). The ALJ observed that while Dr. Inwald described moderate limitations with respect to work activities including social interaction, memory, and adaptation, he nevertheless indicated little or no limitation with respect to plaintiff's ability to perform simpler, less demanding work. Dr. Inwald did not describe plaintiff as disabled, but instead said she would benefit from a highly structured work environment with minimal distractions and stressors. (Tr. 388). According to the Commissioner, the ALJ properly concluded that, to the extent Dr.

Inwald's opinion could be read as describing work preclusive limitations, that opinion lacked sufficient support in the objective clinical evidence, and was inconsistent with other evidence of record including Dr. Shelby-Lane's opinion. Similarly, the ALJ expressly addressed Dr. Imsasa's report, and set forth his reasons for the weight he afforded it. (Tr. 25-26). The ALJ noted that Dr. Imsasa described plaintiff as able to perform simpler, less demanding types of work. The ALJ also reasonably concluded that Dr. Imsasa's opinion as to social limitations lacked sufficient support, and was inconsistent with other evidence of record including plaintiff's proven ability to work as a hairdresser on a part-time basis. Dr. Imsasa only saw plaintiff once, and, according to the Commissioner, based his opinion as to limitations on plaintiff's self-report. (Tr. 508). Thus, the Commissioner urges the Court to conclude that the ALJ's reasonable weighing of the medical opinion evidence of record,

including Drs. Inwald's and Imsasa's opinions, should not be disturbed upon judicial review.

The ALJ expressly noted that plaintiff had been diagnosed as experiencing conditions such as chronic pain disorders. (Tr. 26). The ALJ reasonably focused, however, on the evidence of the symptoms and limitations plaintiff experienced, whatever the specific etiology of her underlying impairments. Plaintiff contends the ALJ erred in considering her doctors' recommendations that she return to work

inconsistent with her claim of disability, because she was working only on a part-time basis. The Commissioner argues that no doctor described plaintiff as unable to work throughout the entire relevant period. Instead, some of plaintiff's doctors consistently advised her to return to her past work, albeit on a part-time basis, while other doctors did not believe plaintiff was limited to part-time work. Despite plaintiff's working as a hairdresser on a part-time basis, the ALJ did not find her capable of performing her past relevant work on a full-time basis. Instead, the ALJ reasonably concluded that she could perform less demanding gainful activity.

The ALJ noted that Dr. Czarnecki only examined plaintiff once, at the request of her representative. (Tr. 26). The ALJ further concluded that the degree of limitation Dr. Czarnecki described was not well-supported by the evidence of record, including the findings of Drs. Inwald and Imsasa, and other evidence such as plaintiff's part-time work, was indicative of her ability to perform at a level higher than Dr. Czarnecki described. In assessing plaintiff's functional capacity, the ALJ expressly found her subjective allegations of incapacitating symptoms and limitations not fully credible. (Tr. 21-26). In reaching this conclusion, the ALJ issued a lengthy credibility analysis in which he expressly considered appropriate factors including the objective medical evidence, medical opinion evidence, plaintiff's treatment, her medications, and her activities. According to the Commissioner, the ALJ's reasonable weighing of these relevant credibility factors

ought not be disturbed on judicial review. The Commissioner argues that it was reasonable for ALJ to note plaintiff's doctors' encouragement of activity as inconsistent with her claims. The Commissioner asserts that plaintiff provides no support for her contention that her doctors' consistent recommendation that she increase her activity was "of no more than therapeutic value." It was also reasonable, according to the Commissioner, for the ALJ to conclude that plaintiff's activities, including a trip to Disney World were inconsistent with her claim of total disability. (Tr. 24). Plaintiff's treating doctor noted that she was independent with both basic and advanced activities of daily living. (Tr. 350). The Commissioner urges the Court to conclude that the ALJ's decision was based on substantial evidence.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

　　If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

    1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.      Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's

opinion is entitled to more weight than a consultative physician who only

examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision

denying benefits "must contain specific reasons for the weight given to the treating

source's medical opinion, supported by the evidence in the case  record, and must

be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's opinion and the reasons for that weight."

Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating

physician should be given controlling weight if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent

with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544;

20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the

claimant sees her "with a frequency consistent with accepted medical practice for

the type of treatment and/or evaluation required for [the] medical condition."  20

C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's

opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"

*Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).

"Claimants are entitled to receive good reasons for the weight accorded their

treating sources independent of their substantive right to receive disability

benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

"The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

B.     Analysis and Conclusions

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent

with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions

from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

The ALJ wrote that plaintiff's treating physician, Dr. Inwald's opinion was consistent with the objective medical evidence because it did not preclude simple, unskilled work with one, two, or three step instructions, and it was, therefore, given great weight to that extent. The ALJ concluded, however, that Dr. Inwald's opinion of "marked" limitations "was not supported by any of the objective clinical evidence and is therefore given little weight." (Tr. at 25). The ALJ concluded that the State agency Mental Residual Functional Capacity Assessment, which indicated that plaintiff retained sufficient mental functions for sustained work activity, was consistent with the objective medical evidence of plaintiff's mental limitations was, therefore, given great weight. With respect to both of these conclusions, while the ALJ's decision contains an extensive recitation of the medical evidence, the ALJ failed to explain why or how Dr. Inwald's opinion was inconsistent with the objective medical evidence or why or how the State agency consultant's opinion was entirely consistent with the objective medical evidence. The undersigned suggests that the ALJ did not give sufficiently "good reasons" for rejecting Dr. Inwald's opinions. And, when evaluating the opinions of treating physicians, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion
> evidence) is important, if the evidence does not support a
> treating source's opinion on any issue reserved to the
> Commissioner and the adjudicator cannot ascertain the
> basis of the opinion from the case record, the adjudicator
> must make "every reasonable effort" to recontact the
> source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also*, 20 C.F.R. § 1527(c), 20 C.F.R.

§ 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to

investigate the facts and develop the arguments both for and against granting

benefits.). To the extent the ALJ viewed Dr. Inwald's opinions as internally

inconsistent, or whether the "release" to return to work as a school aide was limited

to 12 hours per week, the ALJ did not sufficiently explain how or why the medical

evidence supported part of Dr. Inwald's opinion and provided a sufficient basis to

reject other parts of Dr. Inwald's opinions. The ALJ should have at least

considered contacting to Dr. Inwald for clarification, particularly given that Dr.

Inwald treated plaintiff extensively and continuously during the entire period in

question. The undersigned also suggests that, when reevaluating Dr. Inwald's

opinions, the ALJ should consider whether and to what extent Dr. Czarnecki's

opinions and testing are consistent with and supported by Dr. Inwald's opinions

and treatment records. While Dr. Czarnecki was a consulting physician, his

opinions were based on extensive testing that does not appear to have been given

due consideration by the ALJ.

The undersigned further suggests that, given the foregoing conclusions regarding the ALJ's evaluation of the treating physician opinions, the ALJ's RFC and evaluation of plaintiff's credibility will necessarily have to be reconsidered on remand. The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Much of the ALJ's RFC and credibility determination was based on findings that plaintiff's complaints and subjective limitations were not supported by the medical evidence. Given the foregoing recommendation that the

ALJ did not give sufficiently good reasons for rejecting the opinions of Dr. Inwald, the plaintiff's credibility and RFC will necessarily have to reevaluated.

4.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is not within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision was not supported by substantial evidence.

## V.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **DENIED**, and that this matter should be **REMANDED** for further review consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th

Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

|  | s/Michael Hluchaniuk |
|---|---|
| Date: February 28, 2010 | Michael Hluchaniuk |
|  | United States Magistrate Judge |

## CERTIFICATE OF SERVICE

I certify that on February 28, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: <u>Frederick J. Daley, Jr., Susan K. DeClercq, and Commissioner of Social Security</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov